UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEMETRIUS HILL,                                    :

          Plaintiff,                       :

        -against-                            :                    05 Civ. 6645 (AJP)

CORRECTION OFFICERS A. MELVIN,      :                    **OPINION AND ORDER**
V. AMIR, MS. WILSON & CAPTAIN ECK,
                            :

          Defendants.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Pro se plaintiff Demetrius Hill brings this action pursuant to 42 U.S.C. § 1983, alleging false arrest, malicious prosecution, and denial of religious freedom. (Dkt. No. 2: Compl.)

        Presently before the Court is defendants' summary judgment motion. (Dkt. No. 27: Defs. Notice of Motion, Defs. Rule 56.1 Stmt. & Sitaras Aff.; Dkt. No. 28: Defs. Br.; Dkt. No. 36: Defs. Reply Br.) Hill has opposed the motion. (Dkt. No. 35: Hill Rule 56.1 Stmt., Br. & Aff.) The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 16.)

        For the reasons set forth below, defendants' summary judgment motion is GRANTED as to the denial of religious freedom claim as to all defendants, the malicious prosecution claim as

to all defendants, and the false arrest claim as to Correction Officers Amir and Wilson, and DENIED as to the false arrest claim against Correction Officer Melvin and Captain Eck.[1]

## FACTS

### Processing at the Vernon C. Bain Center at Rikers Island

On July 28, 2001, Demetrius Hill was processed into the Vernon C. Bain Center ("V.C.B.C.") on Rikers Island. (Dkt. No. 35: Hill Rule 56.1 Stmt. Att.: Hill Aff. at 8; Dkt. No. 27: Defs. Rule 56.1 Stmt. ¶ 8.) Captain Raymond Eck was a supervisor at the V.C.B.C. Intake area. (Dkt. No. 14: Answer ¶ 5; Hill Aff. at 8-9.)[2]

According to Hill, he and other prisoners complained about being held in the holding cells for hours without food or a place to sit or sleep. (Hill Aff. at 8.) According to Hill, Correction Officer Melvin threatened to confiscate Hill's (and another inmate's) property, including religious medallions, if they "did not 'shut up.'" (Id.) Hill threatened to sue for mistreatment and requested to file a grievance about his religious medallion. (Id.; see Hill Rule 56.1 Stmt. ¶ 14.) According to Hill, Correction Officers Melvin, Amir and Wilson and Captain Eck "whispered" amongst

---

[1] It appears that, although Hill claims he gave the appropriate documents to the U.S. Marshal, defendants Amir and Melvin were not served. (See Dkt. No. 28: Defs. Br. at 1 n.1; Dkt. No. 27: Defs. Rule 56.1 Stmt. at 1 n.1.) The Court directs the Pro Se Office to provide an Amended Summons and apropriate paperwork directly to the Marshal's Office to now perfect service on C.O. Melvin.

[2] Defendants' Brief states that Correction Officer Amir was assigned to Intake Area "A," Correction Officer Andre Melvin was assigned to Intake Area "B," and Correction Officer Dawn Wilson "was the property officer for intake"at V.C.B.C. (Dkt. No. 28: Defs. Br. at 4.) Defendants' evidentiary citations for this, however, do not support the statement as to C.O. Amir or C.O. Wilson.

themselves, pointed at Hill and said, "'[Y]ou['re] going to lose all your shit today and after an ass whipping you'll have something to sue about.'" (Hill Aff. at 8.)

According to Hill, he was removed from the holding cell to be strip searched. (Hill Aff. at 8.) Correction Officer Wilson took Hill's boots, watch, and gold chain (the "religious medallion"). (Defs. Rule 56.1 Stmt. ¶ 6; Dkt. No. 27: Ex. S[3]: Hill Dep. at 75; Hill Aff. at 8.) Hill was given a pink receipt and was told that his property would be returned to him after his release. (Hill Dep. at 76.)[4] Boots, jewelry, watches over $50, and non-plastic religious crosses are not permitted inside the V.C.B.C. (Ex. R: Wilson: People v. Hill, Trial Transcript ["Tr."] 303.) Inmates may obtain plastic religious crosses from the jail's clergy. (Id.) According to Hill, when he complained to Captain Eck about his medallion being taken, the Captain responded, "'[D]o what you're told or get your ass kicked.'" (Hill Aff. at 8.)

At approximately 10:45 a.m. at Intake Area "B," Officer Melvin strip searched Hill. (Ex. G: Infraction Rep.; Ex. H: Infraction Notice; Ex. I: Capt. Eck Rep.; Ex. J: Incident Report Form; Hill Aff. at 8.) Posters on the wall at the V.C.B.C. intake area informed prisoners that possession of weapons will result in arrest. (Defs. Rule 56.1 Stmt. ¶ 7; Ex. R.: Melvin: Tr. 43-44.) Hill passed naked through the metal detector and his clothes were passed through an x-ray machine. (Hill Aff. at 8; Ex. G: Infraction Rep.; Ex. H: Infraction Notice; Ex. J: Incident Report Form.) After Hill's

---

[3] Unless otherwise noted, references to "Ex." are to the exhibits to the Sitaras Affidavit (Dkt. No. 27).

[4] Hill has since returned to Riker's Island and recovered all his property, including the religious medallion. (Hill Dep. at 76.)

clothes passed through the x-ray machine, Officer Melvin searched Hill's pants and produced a 1-1/4 inch single edge razor blade from the right-side pocket. (Defs. Rule 56.1 Stmt. ¶ 8; Ex. G: Infraction Rep.; Ex. H: Infraction Notice; Ex. I: Capt. Eck Rep.; Ex. J: Incident Report Form; Ex. K: Synopsis of Recovered Contraband; Hill Aff. at 8.)

According to Hill, C.O. Melvin planted the razor blade; Hill asserts that C.O. Melvin held the razor blade before searching Hill's pants and "reached into [Hill's] pocket and acted as if he withdrew a razor blade." (Hill Aff. at 8.)[5] Hill asserts that "the metal detector or x-ray machine made no indication that metal was in the pants and myself." (Id.) Hill also asserts that inmates Hareem Gillard and Derrick Felder looked at the x-ray machine monitor as Hill's clothes passed through and saw no weapons or "me[t]al outlines." (Id.; Ex. M: Hearing Report; Ex. N: Notice of Disciplinary Hearing Disposition.)[6] Officer Melvin, however, reported that he initially saw the razor blade on the x-ray machine as Hill's pants passed through. (Ex. G: Infraction Rep.; Ex. I: Capt. Eck Rep.; Ex. J: Incident Rep.)

---

[5] According to Hill, he was subjected to five police searches prior to his arrival at the V.C.B.C., which made it impossible for him to possess a razor in the intake area. (Hill Rule 56.1 Stmt. ¶ 10.) Hill surmises that "defendants retaliated with malice against plaintiff for him requesting a grievance or threatening to file a lawsuit." (Id. ¶ 14.) Hill claims that "all defendants worked in collusion to fabricate, manufacture, and plant the razor on the plaintiff." (Id. ¶ 9.)

[6] Inmate Gillard confirmed this in his testimony at Hill's prison disciplinary hearing. (See Ex. M: Hearing Rep.) Gillard testified at Hill's criminal trial as a witness for the defense, but the Court has not been provided with any relevant excerpts of his trial testimony. (Defs. Rule 56.1 Stmt. ¶ 18; Ex. R: Gillard: Tr. 213-14.) There is no non-hearsay evidence in the record as to what inmate Felder saw.

Officer Melvin reported the infraction – that he had found a razor blade in Hill's pants pocket – to Captain Eck. (Defs. Rule 56.1 Stmt. ¶ 9; Ex. G: Infraction Rep.; Ex. I: Capt. Eck Rep.; Ex. J: Incident Rep.) On July 28, 2001, Hill was infracted for possession of contraband weapons, pursuant to Department of Correction Charge No. 103.10, and referred to the Gang Intelligence Unit for re-arrest. (Defs. Rule 56.1 Stmt. ¶ 10; Ex. G: Infraction Rep.; Ex. H: Infraction Notice; Ex. K: Synopsis of Recovered Contraband; Hill Aff. at 9.) Captain Eck read Hill his legal rights. (Defs. Rule 56.1 Stmt. ¶ 11; Ex. L: Legal Rights Form Signed by Hill.)

On July 31, 2001, following a disciplinary hearing before Captain Edward Vinogroski, Hill received 90 days in punitive segregation. (Defs. Rule 56.1 Stmt. ¶ 12; Ex. M: Hearing Report; Ex. N: Hearing Disposition Notice; Hill Aff. at 7.) Hill was immediately placed on "Red I.D." status, an elevated prisoner classification. (Hill Rule 56.1 Stmt. ¶ 13; Hill Aff. at 9; Ex. N: Hearing Disposition Notice; Ex. O: Notice of Authorization for Initial Placement in Red ID Status; Ex. P: Notice of Hearing Determination for Red ID and/or Enhanced Restraint Status.)[2]

On July 31, 2001, Hill also was arrested on the possession of contraband charge. (Defs. Rule 56.1 Stmt. ¶ 14; Ex. B: Crim. Compl.; Hill Aff. at 9.) On August 23, 2001, Hill was indicted by a grand jury and charged with first degree promoting prison contraband pursuant to Penal Law § 205.25(2) and fourth degree criminal possession of a weapon, Penal Law § 265.01(2). (Defs. Rule 56.1 Stmt. ¶ 15; Ex. D: Grand Jury Indictment.)

---

[2]     According to Hill, the Red I.D. classification required him "to wear 'red mittens hand cuffed with a waist chain behind his back'" when he was in transit to court and while in court. (Compl. "Claim Three.")

**Hill's Criminal Trial**

Hill's criminal trial began on December 10, 2003 and concluded on December 19, 2003. (Defs. Rule 56.1 Stmt. ¶ 17; Ex. E: Exhibit Sheet; Ex. F: Verdict Sheet.) Captain Eck, Correction Officer Melvin, Correction Officer Maury Johnson, and Investigator Uriondo testified for the prosecution; Police Officer Scott Griczewicz, inmate Hareem Gillard, Correction Officer Amir, Correction Officer Wilson, Captain Eck, and Hill testified for the defense. (See Defs. Rule 56.1 Stmt. ¶ 18; see generally Ex. R: Tr.)

Hill alleges, without supporting proof, that all four defendants perjured themselves at trial by stating that they did not recall the July 28, 2001 incident, that they did not recall other incidents that occurred that day, and that Officer Melvin found, as opposed to planted, the razor in Hill's pants. (Hill Rule 56.1 Stmt. ¶¶ 8, 12; Hill Aff. at 9; see Defs. Rule 56.1 Stmt. ¶ 20; Ex. R: Amir: Tr. 275, 286; Wilson: Tr. 298-99.)

At Hill's criminal trial, Correction Officers Amir and Wilson testified that they did not recall events occurring on July 28, 2001. (Defs. Rule 56.1 Stmt. ¶ 20; Hill Rule 56.1 Stmt. ¶ 8.)[8] The following are excerpts from C.O. Amir's and C.O. Wilson's testimony:

> [MR. HIGGINS (Counsel for Hill)]: Okay. Directing your attention to July 28th of 2001, did you work on that date?

---

[8] The Court's knowledge of defendants' testimony at Hill's criminal trial is limited to the excerpts submitted by defendants in Exhibit R. Hill has not submitted any trial transcript excerpts as support for his claims, despite having been instructed to do so and given time to do so by the Court. Excerpts of Officer Melvin and Captain Eck's testimony, as provided by defendants, do not include any statements concerning recollection of the events surrounding the July 28, 2001 incident.

[C.O. AMIR]:  Well, like I told you earlier, I didn't recollect that information until you showed me the paperwork.

(Ex. R: Amir: Tr. 275.)

[MR. HIGGINS]:  About how many incident reports have you written since July the 28th of 2001?

. . .

[C.O. AMIR]:  Like I tell you, I work in a jail environment, okay.  Anything could happen on any day.  So, I can't specifically tell you how many or not.

(Ex. R: Amir: Tr. 286.)

[MR. HIGGINS]:  You have no recollection of the incident that is written on the document?

[C.O. WILSON]:  No, sir.  I don't.

(Ex. R: Wilson: Tr. 303.)

On December 19, 2003, Hill was found not guilty.  (Defs. Rule 56.1 Stmt. ¶ 17; Ex. F: Verdict; Hill Aff. at 9.)

**Hill's Federal Complaint**

On May 16, 2005, Hill signed his present federal § 1983 complaint asserting claims against Correction Officers Melvin, Amir and Wilson, and Captain Eck.  (Dkt. No. 2: Compl., last page.)  Hill's complaint was received by the Court's Pro Se Office on May 20, 2005.  (Compl., 1st

page.)  The Court interprets Hill's pro se complaint as alleging three claims:  (1) false arrest;

(2) malicious prosecution; and (3) violation of Hill's religious freedom.  (<u>See</u> Compl.)[2]

---

[2]     Hill's complaint consists of seven "claims."  (Compl.)  Some of Hill's "claims" contain multiple legal causes of action while others consist solely of factual allegations that the Court does not construe as additional causes of action.

"Claim One" alleges that defendants (1) violated Hill's religious freedom, (2) caused Hill to be falsely arrested, (3) committed perjury at Hill's criminal trial and at the institutional hearing, and (4) conspired to commit perjury in order to get Hill convicted.

"Claim Two (A)" contains factual allegations about the events of July 28, 2001, including the fact that Hill's religious medallion was taken.  "Claim Two (B)" describes the strip search and alleges that Officer Melvin planted the razor in Hill's pants.

"Claim Three" alleges that, as a result of the wrongful Red ID status, Hill sustained "severe pains to his shoulders repeated cuts & swelling of his wrists, stiffening of the joints, and pain when ever plaintiff had to sit down or lie down."  The injuries allegedly occurred while Hill was being driven in a bus, without a seatbelt, and with his hands cuffed behind his back, and was knocked around from "pot holes or sharp turns."

"Claim Four" describes Hill's suicide attempts.   "Claim Five" and "Claim Six" describe Hill's difficulty in making bail while locked up for the contraband charge.  "Claim Seven" repeats the claim that defendants committed perjury.

Defendants identify six claims in Hill's complaint: "false arrest, malicious prosecution, conspiracy, an unconstitutional prisoner classification, perjury, and confiscation of [plaintiff's] religious effects."  (Dkt. No. 28: Defs. Br. at 3.)

**ANALYSIS**

I.     **SUMMARY JUDGMENT STANDARDS IN SECTION 1983 CASES**[10/]

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u>, <u>e.g.</u>, <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); <u>Lang</u> v. <u>Retirement Living Pub. Co.</u>, 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. <u>See</u>, <u>e.g.</u>, <u>Adickes</u> v. <u>S.H. Kress & Co.</u>, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 36 (2d Cir. 1994); <u>Gallo</u> v. <u>Prudential Residential Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may

---

[10/]     For additional decisions by this Judge discussing the summary judgment standards in Section 1983 cases, in language substantially similar to that in this entire section of this Report and Recommendation, <u>see</u>, <u>e.g.</u>, <u>Denis</u> v. <u>N.Y.S. Dep't of Corr. Servs.</u>, 05 Civ. 4495, 2006 WL 217926 at *9-11 (S.D.N.Y. Jan. 30, 2006) (Peck, M.J.), <u>report & rec. adopted</u>, 2006 WL 406313 (S.D.N.Y. Feb. 22, 2006) (Kaplan, D.J.); Ramashwar v. <u>Espinoza</u>, 05 Civ. 2021, 2006 WL 23481 at *5-6 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.); <u>Doe</u> v. <u>Goord</u>, 04 Civ. 0570, 2005 WL 3116413 at *8-10 (S.D.N.Y. Nov. 22, 2005) (Peck, M.J.); <u>Dawkins</u> v. <u>Jones</u>, No. 03 Civ. 0068, 2005 WL 196537 at *9-10 (S.D.N.Y. Jan. 31, 2005) (Peck, M.J.); <u>Hall</u> v. <u>Perilli</u>, 03 Civ. 4635, 2004 WL 1068045 at *3 (S.D.N.Y. May 13, 2004) (Peck, M.J.); <u>Baker</u> v. <u>Welch</u>, 03 Civ. 2267, 2003 WL 22901051 at *4-6 (S.D.N.Y. Dec. 10, 2003) (Peck, M.J.); <u>Muhammad</u> v. <u>Pico</u>, 02 Civ. 1052, 2003 WL 21792158 at *10-11 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.) (citing prior decisions).

discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513; see also, e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223. The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. United States Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. United States Fire Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must 'extend extra consideration' to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Rakoff, D.J. & Peck, M.J.) (citations & internal quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").[11/] Moreover, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. See, e.g., Irby v. New York City

---

[11/] See also, e.g., Commer v. American Fed'n of State, County & Mun. Employees, 272 F. Supp. 2d 332, 335 (S.D.N.Y. 2003) ("[T]he Court is mindful that the plaintiff is proceeding pro se and that his submissions should be held to 'less stringent standards than formal pleadings drafted by lawyers. . . .'"), aff'd, 390 F.3d 203 (2d Cir. 2004); Douglas v. Portuondo, 232 F. Supp. 2d 106, 113 (S.D.N.Y. 2002).

Transit Auth., 262 F.3d 412, 413-14 (2d Cir. 2001) ("[W]e remind the district courts of this circuit, as well as summary judgment movants, of the necessity that pro se litigants have actual notice, provided in an accessible manner, of the consequences of the pro se litigant's failure to comply with the requirements of Rule 56. . . . [E]ither the district court or the moving party is to supply the pro se litigant with notice of the requirements of Rule 56. . . . In the absence of such notice or a clear understanding by the pro se litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment is virtually automatic."); McPherson v. Coombe, 174 F.3d at 280-81 ("'The failure of a district court to apprise pro se litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal.'") (citations omitted).[12/] Defendants here served the appropriate notices on Hill. (Dkt. No. 27: Defs. Rule 56.2 Notice.)

"Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases); see also, e.g., Viruet v. Citizen Advice Bureau, 01 Civ. 4594, 2002 WL 1880731 at *9 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.); Smith v. Planas, 975 F. Supp. 303, 305 n.2 (S.D.N.Y. 1997).

---

[12/]    See also, e.g., Trammell v. Coombe, No. 97-2622, 201 F.3d 432 (table), 1999 WL 1295856 at *2 (2d Cir. Dec. 23, 1999); Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999); Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996); see generally S.D.N.Y. Local Civil Rule 56.2 (requiring service of notice explaining the requirements of Rule 56 on litigant proceeding pro se).

## II.    HILL'S DENIAL OF RELIGIOUS FREEDOM CLAIM IS TIME BARRED

The statute of limitations for a § 1983 action is three years.  See, e.g., Walker v. Jastremski, 430 F.3d 560, 561 (2d Cir. 2005), cert. denied, 127 S. Ct. 1887 (2006); Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2005); Warren v. Altieri, 59 Fed. Appx. 426, 427 (2d Cir. 2003) (Plaintiff's "§ 1983 action is governed by New York's three-year statute of limitations as set out in N.Y. C.P.L.R. § 214, the provision applicable to actions for personal injury."); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002), cert. denied, 538 U.S. 922, 123 S. Ct. 1574 (2003); Paige v. Police Dep't, 264 F.3d 197, 199 n. 2 (2d Cir. 2001); Connolly v. McCall, 254 F.3d 36, 40-41 (2d Cir. 2001).[13/]

Hill's complaint was received by the Court's Pro Se Office on May 20, 2005, but it was signed by Hill on May 16, 2005.  (Dkt. No. 1: Compl. at 1st & last pages.)  In the absence of any other indication, the Court assumes that Hill gave the complaint to prison officials on May 16, 2005, and thus under the prison mailbox rule, that date is deemed the date the complaint was filed.  See, e.g., Hardy v. Conway, No. 04-0934, 2006 WL 93083 at *1 (2d Cir. Jan. 12, 2006) ("[I]n the absence

---

[13/]    See also, e.g., Denis v. N.Y.S. Dep't of Corr. Servs., 05 Civ. 4495, 2006 WL 217926 at *11 (S.D.N.Y. Jan 30, 2006) (Peck, M.J.), report & rec. adopted, 2006 WL 406313 (S.D.N.Y. Feb. 22, 2006) (Kaplan, D.J.); Diallo v. Williams, 04 Civ. 4556, 2006 WL 156158 at *2 (S.D.N.Y. Jan. 20, 2006); Allan v. City of New York, 386 F. Supp. 2d 542, 548 (S.D.N.Y. 2005); Mitchell v. Home, 377 F. Supp. 2d 361, 371 (S.D.N.Y. 2005); Dawkins v. Jones, 03 Civ. 0068, 2005 WL 196537 at *8 (S.D.N.Y. Jan. 31, 2005) (Peck, M.J.); Muhammad v. Pico, 02 Civ. 1052, 2003 WL 21792158 at *18 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.); Bristow v. Smith, 03 Civ. 2663, 2003 WL 21437005 at *1 (S.D.N.Y. June 18, 2003) (Peck, M.J.); cf. Noguera v. Hasty, 99 Civ. 8786, 2000 WL 1011563 at *12 (S.D.N.Y. July 21, 2000) (Peck, M.J.) report & rec. adopted in part, 2001 WL 243535 (S.D.N.Y. Mar. 12, 2001) (Wood, D.J.).

of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing.") (citing cases); <u>Walker</u> v. <u>Jastremski</u>, 430 F.3d at 562-63; <u>Denis</u> v. <u>N.Y.S. Dep't of Corr. Servs.</u>, 2006 WL 217926 at *11; <u>Rosario</u> v. <u>Bennett</u>, 01 Civ. 7142, 2002 WL 31852827 at *14 (S.D.N.Y. Dec. 20, 2002) (Peck, M.J.) (under the "federal 'prisoner mailbox rule,'" incarcerated pro se litigants are deemed to have filed their federal civil complaints and federal habeas petitions on the date the papers were handed to prison officials for mailing) (citing <u>Houston</u> v. <u>Lack</u>, 487 U.S. 266, 276, 108 S. Ct. 2379, 2385 (1988)).[14]

Accordingly, because Hill's religious medallion was taken on July 28, 2001, more than three years before May 16, 2005, all defendants are granted summary judgment dismissing Hill's denial of religious freedom claim.

## III. DEFENDANTS' SUMMARY JUDGMENT MOTION AS TO HILL'S FALSE ARREST CLAIM IS GRANTED IN PART AND DENIED IN PART

### A. Hill's False Arrest Claim Is Not Time-Barred

Defendants' summary judgment motion seeking dismissal of Hill's false arrest claim principally is based on statute of limitation grounds. (<u>See</u> Dkt. No. 28: Defs. Br. at 7-0; Dkt. No. 36: Defs. Reply Br. a 4-5.) The statute of limitations for a § 1983 action is three years. (<u>See</u> cases cited

---

[14] <u>See also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Montoya</u>, 335 F.3d 73, 75-76 (2d Cir. 2003); <u>Noble</u> v. <u>Kelly</u>, 246 F.3d 93, 97 (2d Cir.), <u>cert. denied</u>, 534 U.S. 886, 122 S. Ct. 197 (2001); <u>Hill</u> v. <u>Senkowski</u>, 409 F. Supp. 2d 222, 229 (W.D.N.Y. 2006); <u>Bordas</u> v. <u>Greiner</u>, 04 Civ. 8904, 2005 WL 3071461 at *2 (S.D.N.Y. Nov. 14, 2005); <u>Shomo</u> v. <u>City of New York</u>, 03 Civ. 10213, 2005 WL 756834 at *3 (S.D.N.Y. Apr. 4, 2005); <u>Dawkins</u> v. <u>Jones</u>, 2005 WL 196537 at *8; <u>Coble</u> v. <u>Stinson</u>, No. 97-CV-0717, 2004 WL 1454392 at *1 n.4 (W.D.N.Y. Jun. 23, 2004); <u>Moreno-Castillo</u> v. <u>United States</u>, 02 Civ. 2858, 2003 WL 23109747 at *1 n.1 (S.D.N.Y. Dec. 31, 2003).

on page 13 above.) "Federal law governs the determination of the accrual date (that is, the date the statute of limitations begins to run) for purposes of the statute of limitations in a section 1983 action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997); accord, e.g., Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994), cert. denied, 516 U.S. 808, 116 S. Ct. 53 (1995).

In general under federal law, "the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action." Covington v. City of New York, 171 F.3d 117, 121 (2d Cir.) (quotations omitted), cert. denied, 528 U.S. 946, 120 S. Ct. 363 (1999).[15/]  As the Second Circuit noted in Covington, however, "in the case of some actions brought under § 1983, this general rule is subject to the Supreme Court's analysis in Heck" v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).  Covington v. City of New York, 171 F.3d at 121.  In Heck, the Supreme Court held as follows:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

---

[15/]  See also, e.g., Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004); Ormiston v. Nelson, 117 F.3d at 71; Eagleston v. Guido, 41 F.3d at 871; Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980), cert. denied, 450 U.S. 920, 101 S. Ct. 1368 (1981).

But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

\* \* \*

Under our analysis the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen. Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

Heck v. Humphrey, 512 U.S. at 486-87, 489-90, 114 S. Ct. at 2372-73, 2374 (citations & fns. omitted, emphasis added); see also, e.g., Muhammad v. Close, 540 U.S. 749, 751, 124 S. Ct. 1303, 1304 (2004); Jenkins v. Haubert, 179 F.3d 19, 24-25 (2d Cir. 1999); Amaker v. Weiner, 179 F.3d 48, 51, 52 (2d Cir. 1999) ("[W]here the viability of the plaintiff's claims depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct."); Duamutef v. Morris, 956 F. Supp. 1112, 1115, 1117-18 (S.D.N.Y.1997).

The Second Circuit in Covington applied Heck to a false arrest claim:

[I]n order to determine whether [plaintiff's] false arrest claim accrued at the time of the arrest or only when the prosecution against him on the charges relating to that arrest was dismissed, the question is whether "a judgment in favor of [[plaintiff] in the § 1983 action] would necessarily imply the invalidity of" any conviction or sentence that might have resulted from the prosecution of [plaintiff] resulting from the arrest.

Covington v. City of New York, 171 F.3d at 122 (quoting Heck v. Humphrey, 512 U.S. at 487, 114 S. Ct. at 2372).[16]

The rationale for barring § 1983 false arrest claims while criminal proceedings are ongoing is to prevent inconsistency between the civil and criminal proceedings. See, e.g., Covington v. City of New York, 171 F.3d at 124 ("So long as the criminal case remained pending . . . a parallel § 1983 case based upon a false arrest and wrongful search claim would create the distinct possibility of an inconsistent result if the prosecutor's evidence was dependent upon a valid arrest. That is the reason why the § 1983 cause of action could not accrue during the pendency of the criminal case."); see also, e.g., Heck v. Humphrey, 512 U.S. at 484, 114 S. Ct. at 2371 ("This requirement [that the criminal proceeding terminate in favor of the accused] avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of . . . two conflicting resolutions arising out of the same or identical transaction.") (quotations omitted).

Covington instructed how Heck applies to the accrual of a false arrest claim for statute of limitation purposes:

---

[16]    Accord, e.g., Morris v. New York City Police Dep't, 59 Fed. Appx. 421, 422 (2d Cir. 2003) ("[I]f plaintiff can show that a conviction obtained against him would have depended upon a false arrest, a Section 1983 claim arising from the false arrest does not accrue until such a conviction is no longer a possibility."); see also, e.g., Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996); Woods v. Candela, 47 F.3d 545, 546 (2d Cir.), cert. denied, 516 U.S. 808, 116 S. Ct. 54 (1995); Stephenson v. Rosa, 03 Civ. 8503, 2006 WL 464081 at *1 (S.D.N.Y. Feb. 24, 2006); Reid v. City of New York, 00 Civ. 5164, 2004 WL 626228 at *8-9 (S.D.N.Y. Mar. 29, 2004), report & rec. adopted, 2004 WL 1488194 (S.D.N.Y. July 1, 2004); Lucas v. Novogratz, 01 Civ. 5445, 2002 WL 31844913 at *3 (S.D.N.Y. Dec. 18, 2002); McAllister v. New York City Police Dep't, 49 F. Supp. 2d 688, 702-03 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.) (& cases cited therein).

[T]he question in this case is when [plaintiff's] false arrest claim accrued so as to trigger the statute of limitations.

We hold that the answer to this question turns on whether a judgment in [plaintiff's] favor on the false arrest claim would have undermined the validity of any potential conviction in the criminal proceedings against him. If a favorable determination on the false arrest claim would in fact have undermined the validity of any potential conviction against [plaintiff] resulting from the state criminal proceedings, then [plaintiff's] false arrest claim would not accrue until those criminal proceedings terminated. . . .

Covington v. City of New York, 171 F.3d at 119 (citations omitted).

Recovery in a § 1983 false arrest action clearly undermines the integrity of criminal proceedings when the prosecution's "only evidence for conviction was obtained pursuant to an arrest." Covington v. City of New York, 171 F.3d at 123 ("[I]n a case where the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence."); see, e.g., Stephenson v. Rosa, 2006 WL 464081 at *1 ("[I]f a plaintiff's claim is grounded in an alleged Fourth Amendment violation, and the evidence obtained through the alleged violation is the *sine qua non* of the prosecution's case, then the statute of limitations begins to run on the date of dismissal of the conviction. . . . If, on the other hand, there is independent evidence supporting the conviction – separate and apart from the evidence alleged to be the fruit of the poison tree – then the date of accrual is the date of arrest."); Reid v. City of New York, 2004 WL 626228 at *8 ("The date on which a false arrest claim accrues is determined by considering 'whether the prosecution could have obtained a conviction without using the evidence tainted by the false arrest. If so, the claim accrues at the time of arrest. If not, the [claim] accrues when the prosecution ends.' . . . In other words, if

evidence obtained as a result of the arrest was necessary for a conviction, then the cause of action for false arrest does not accrue until the prosecution is terminated.  If the allegedly tainted evidence was not necessary, then the cause of action accrues at the time of arrest.").[17]

Defendants interpret Heck, Covington and Stephenson to require accrual of the claim for statute of limitation purposes from the date criminal prosecution is terminated only where the potential conviction is based on "evidence obtained and used against [plaintiff] as a result of his allegedly false arrest." (Dkt. No. 36: Defs. Reply Br. at 5, emphasis in original.)  "Here, [Hill] was not convicted, nor was any evidence actually obtained as a result of a false arrest." (Id.)  The Court disagrees.  Heck and Covington suggest that the existence of evidence independent of the arrest is key to the inquiry.  Here, there was no evidence to prosecute Hill for possession of contraband that was independent of the evidence obtained by C.O. Melvin which led to Hill's arrest – Officer Melvin's alleged finding of a razor blade in Hill's pants.  Had Hill brought a successful § 1983 false arrest action prior to the conclusion of his criminal trial, a civil verdict for Hill, finding that C.O. Melvin planted the razor blade, would necessarily be inconsistent with a criminal conviction for possession of the razor blade, since both would hinge upon whether C.O. Melvin found or planted the razor blade in Hill's pants pocket.

---

[17] See also, e.g., Lucas v. Novogratz, 2002 WL 31844913  at *3 ("[T]he Second Circuit has made clear that Heck does not preclude a claim for false arrest under § 1983 unless the sole basis for the conviction was evidence seized as a result of the illegal arrest."); compare, e.g., Warren v. Altieri, 59 Fed. Appx. 426, 427 (2d Cir. 2003) ("Plaintiff's allegations of assault [by police] are unrelated to the criminal charges underlying the warrant that prompted his arrest.  Accordingly, Covington is inapplicable" and the statute of limitations began to run as of the time of the assault.).

When allegedly planted evidence is the basis of an arrest and criminal prosecution, a successful judgment in a § 1983 false arrest claim would necessarily undermine the criminal proceedings, and the claim thus does not accrue until the prosecution ends favorably for the § 1983 plaintiff. E.g., Wiley v. Chicago, 361 F.3d 994, 996 (7th Cir.) ("If, as alleged, [plaintiff] was arrested and prosecuted solely on the basis of drugs planted by the arresting officers, then any attack on the arrest would necessarily challenge the legality of a prosecution premised on the planted drugs. Therefore, any civil suit against [the officer] for a false arrest would necessarily imply the invalidity of the potential conviction, and Heck requires that [plaintiff's] Fourth Amendment claim would not begin to accrue until the charges were dismissed.") (citations omitted), cert. denied, 543 U.S. 819, 125 S. Ct. 68 (2004); see, e.g., Henry v. Purvis, 111 Fed. Appx. 622, 623-24 (2d Cir. 2004) (§ 1983 claim for false arrest "assert[ing] that the defendants lied to obtain a search warrant, planted evidence [and] destroyed exculpatory evidence" had not yet accrued under Heck and Covington where § 1983 plaintiff's criminal proceeding was pending on appeal); Woods v. Candela, 47 F.3d 545, 546 (2d Cir.) (Plaintiff's "present Fourth and Fifth Amendment claims, which rest on the very same grounds [as the reversal of plaintiff's conviction], necessarily imply that his conviction was unlawful, and thus could not have been raised prior to the . . . reversal of his conviction."), cert. denied, 516 U.S. 808, 116 S. Ct. 54 (1995); Brown v. City of Milwaukee Police Dep't, No. 05C390, 2005 WL 1923113 at *5 (W.D. Wis. Aug. 9, 2005) ("Because evidence seized during an unconstitutional search should be suppressed at trial, the validity of petitioner's potential conviction for forgery would necessarily be at issue if he were able to prove that respondents planted the evidence supporting that charge in

his hotel room while conducting an unlawful search . . . Thus, petitioner's [§ 1983] claims are barred under <u>Heck</u>" until criminal proceedings terminate in his favor.); <u>Walden</u> v. <u>City of Chicago</u>, 391 F. Supp. 2d 660, 673 (N.D. Ill. 2005) ("[I]f a plaintiff is arrested and prosecuted solely or perhaps principally on the basis of, for example, allegedly planted drugs . . . 'a[n] attack on the arrest would necessarily challenge the legality of a prosecution premised on the [illegally gained evidence].'") (brackets in original, quoting <u>Wiley</u>); <u>Quintana</u> v. <u>Gates</u>, No. CV0007166, 2004 WL 1661540 at *3, 7 (C.D. Cal. July 20, 2004) ("When the facts supporting the [arresting] officers' probable cause determination are the same as the facts supporting the plaintiff's conviction, a finding [in a § 1983 action] that the officers lacked probable cause would 'necessarily imply the invalidity' of the plaintiff's conviction." Civil plaintiff's § 1983 claim alleging police officers unlawfully arrested plaintiff and planted drug evidence was barred under <u>Heck</u> because parole revocation had not been overturned and success in the § 1983 action would imply the invalidity of the parole revocation.); <u>Hobley</u> v. <u>Burge</u>, No. 03 C 3678, 2004 WL 1243929 at *7 (N.D. Ill. June 3, 2004) ("[S]uccess on [§ 1983 plaintiff's] false arrest claim would imply the invalidity of his conviction [because] . . . every piece of evidence to which [defendants] point [as establishing plaintiff's guilt] has been alleged to be tainted or fabricated by Defendant Officers and allegedly stems from the initial illegal arrest . . . As such, [plaintiff] could not have filed his false arrest claim until his pardon" and thus claim is now timely.); <u>McMillen</u> v. <u>Nunley</u>, No. 3:02-CV-2367, 2003 WL 22227863 at *2 (N.D. Tex. Sept. 25, 2003) ("If plaintiff can prove that defendant made false statements to secure the search warrant . . . such success would necessarily call into question his conviction, because his conviction and the

falsified search warrant allegedly resulted from the same series of events," and accordingly § 1983 plaintiff cannot proceed with § 1983 false arrest claim until his conviction is overturned.), <u>report & rec. adopted</u>, 2003 WL 22469080 (N.D. Tex. Oct. 22, 2003).

Because <u>Heck</u> and <u>Covington</u> would have precluded Hill from bringing a § 1983 false arrest claim prior to the not guilty verdict in his criminal case, his false arrest claim did not accrue for statute of limitation purposes until that date. Hill's criminal trial ended on December 19, 2003, giving him until December 19, 2006 to commence a § 1983 false arrest action. Hill's § 1983 complaint was filed in May 2005. Thus, Hill's false arrest claim is not time-barred.

**B.** **Legal Standard Governing False Arrest Claims**

Defendants also moved for summary judgment against Hill's false arrest claim on qualified immunity grounds. To decide the qualified immunity issue, the Court must explore the requirements for a § 1983 false arrest claim and the factual allegations as to each defendant's alleged involvement in Hill's search and arrest. The Court turns to those issues.

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. <u>See</u> 42 U.S.C. § 1983; <u>West</u> v. <u>Atkins</u>, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." <u>Sykes</u> v. <u>James</u>, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), <u>cert. denied</u>, 512 U.S. 1240, 114 S. Ct. 2749 (1994); <u>see also</u>, <u>e.g.</u>, <u>Ramashwar</u> v. <u>Espinoza</u>, 05 Civ. 2021, 2006 WL 23481 at *6 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.).

"It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause." Cook v. Sheldon, 41 F.3d 73, 78 (2d Cir. 1994); accord, e.g., Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997).

"'A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law.'" Covington v. City of New York, 171 F.3d 117, 122 (2d Cir.) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)), cert. denied, 528 U.S. 946, 120 S. Ct. 363 (1999); see also, e.g., Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003); Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002); Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992); Chimurenga v. City of New York, 45 F. Supp. 2d 337, 341 (S.D.N.Y. 1999).

"Under New York state law, to prevail on a claim of false arrest a plaintiff must show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" Jocks v. Tavernier, 316 F.3d at 134-35 (quoting Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, cert. denied, 423 U.S. 929, 96 S. Ct. 277 (1975)); see, e.g., Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Covington v. City of New York, 171 F.3d at 122 ("Under New York law, 'a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification.'") (quoting Weyant v. Okst, 101 F.3d at

852); Marshall v. Sullivan, 105 F.3d 47, 50 (2d Cir. 1996); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676 (1996).

"Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006).[18] "[A] grand jury's decision of whether probable cause exists to indict is distinct from the probable cause determination of whether an arrest is privileged." Jocks v. Tavernier, 316 F.3d at 135. "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Escalera v. Lunn, 361 F.3d at 743 (quoting Weyant v. Okst, 101 F.3d at 852).[19] "Defenses which negate the existence of a crime should similarly negate probable cause [for an arrest]." Jocks v. Tavernier, 316 F.3d at 135.

---

[18] Accord, e.g., Escalera v. Lunn, 361 F.3d at 743; Caldarola v. Calabrese, 298 F.3d at 161; Kent v. Katz, 312 F.3d 568, 573 (2d Cir. 2002); Covington v. City of New York, 171 F.3d at 121; Marshall v. Sullivan, 105 F.3d at 50; Weyant v. Okst, 101 F.3d at 852; Singer v. Fulton County Sheriff, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."); Bernard v. United States, 25 F.3d 98, 102, 104 (2d Cir. 1994) ("the existence of [probable cause] is a complete defense to an action for false arrest"); Fox v. City of New York, 03 Civ. 2268, 2004 WL 856299 at *4-5 (S.D.N.Y. Apr. 20, 2004); Greenfield v. City of New York, 99 Civ. 2330, 2000 WL 124992 at *5 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); Shaw v. City of New York, 95 Civ. 9325, 1997 WL 187352 at *3 (S.D.N.Y. April 15, 1997) (Peck, M.J.); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992) ("under New York law, 'probable cause serves as a complete defense to the charges of false arrest and malicious prosecution'"), aff'd, 993 F.2d 1534 (2d Cir.), cert. denied, 510 U.S. 817, 114 S. Ct. 68 (1993).

[19] Accord, e.g., Jaegly v. Couch, 439 F.3d at 152; Boyd v. City of New York, 336 F.3d at 75-76; Caldarola v. Calabrese, 298 F.3d at 162; Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001); Marshall v. Sullivan, 105 F.3d at 54.

When planted evidence is the basis for an arrest, officers accused of planting the evidence cannot assert probable cause as a reason to dismiss a claim for false arrest. Chimurenga v. City of New York, 45 F. Supp. 2d at 342 ("As to the false arrest claims, the defendants argue that the claims must be dismissed because the discovery of a razor blade in plaintiff's belongings created probable cause for her arrest. This might exonerate other officers involved in the arrest, but it is irrelevant to defendants . . . who are accused of 'planting' the blade.")[20] (citing Dunn v. City of Syracuse, 83 A.D.2d 783, 443 N.Y.S.2d 463, 464 (4th Dep't 1981) ("One who wrongfully accuses another of criminal conduct and induces or procures that person's arrest may be liable for false arrest.")); see also Neal v. City of Harvey, Ill., 1 F. Supp. 2d 849, 856, 857 (N.D. Ill. 1998) (Summary judgment of § 1983 plaintiff's false arrest claim denied where there was "a genuine issue of fact as to whether the [controlled] substance was planted on [plaintiff]" and "a genuine issue of fact exist[ed] as to the probable cause to arrest [plaintiff].").

**C.      Summary Judgment On The False Arrest Claim Is Denied Officer Melvin and Captain Eck**

Summary judgment on Hill's false arrest claim against Correction Officer Melvin and Captain Eck is denied because there is a triable issue of fact as to whether Correction Officer Melvin planted the razor, as Hill alleges. See, e.g., Chimurenga v. City of New York, 45 F. Supp. 2d 337, 342 (S.D.N.Y. 1999) ("While the proof of this allegation [that defendants planted a razor blade in

---

[20]      Chimurenga held that, "drawing all reasonable inferences in favor of the plaintiff, there are triable issues of fact as to whether the razor blade was 'planted' in the box by the individual or concerted actions of [defendants]." Chimurenga v. City of New York, 45 F. Supp. 2d at 342 (citation & fn. omitted).

plaintiff's property] is entirely circumstantial, it is not insufficient to create a jury issue as to whether [defendants] worked in concert to plant the blade and thereby falsely engineered plaintiff's arrest.").[21] While there is less evidence as to whether Captain Eck was involved in Officer Melvin's discovery or planting of the razor, because he signed the Infraction Report and the Infraction Notice as the "Investigating Officer" and "Supervisor" (Ex. G: Infraction Rep.; Ex. H: Infraction Notice), and because he did not move for summary judgment on the merits of the false arrest claim against him, Captain Eck is denied summary judgment on Hill's false arrest claim.

The factual dispute concerning C.O. Melvin's discovery or planting of the razor blade (and Captain Eck's knowledge of same) also precludes summary judgment for Correction Officer Melvin and Captain Eck on qualified immunity grounds. E.g., McClellan v. Smith, 439 F.3d 137, 148-49 (2d Cir. 2006) (reversing summary judgment because of factual disputes as to qualified immunity); Curry v. Syracuse, 316 F. 3d 324, 334-35, 337 (2d Cir. 2003) (same); Marshall v. Sullivan, 105 F.3d 47, 54 (2d Cir. 1996); Weyant v. Okst, 101 F.3d 845, 857-58 (2d Cir. 1996)

---

[21]    In Chimurenga, the only evidence provided by the plaintiff of the alleged planting of the razor was as follows: "Among other things, plaintiff has testified not only that she never placed any razor blade in the box of books but also that there was no opportunity for anyone else besides [defendant] to do so, since she inspected the books for approximately forty minutes on the day before she brought them to the Detention Center, personally placed the books in the box shortly before she left her apartment for the facility on October 22, 1997, and kept the box in her sole and exclusive possession until it was surrendered for scanning. Furthermore, plaintiff testified that the blade was in plain view in the box when it was 'discovered' by [defendant], a location consistent with her theory that the blade was hastily planted." Chimurenga v. City of New York, 45 F. Supp. 2d at 342 (citations omitted). Here, similarly, Hill asserts that the razor was planted and offers as further proof the fact that he underwent five searches by the police before being taken to Rikers. (See page 4 n.5 above.)

(denying summary judgment for defendants on qualified immunity grounds where facts relevant to the reasonableness of officers' actions during an arrest were in dispute); Oliveira v. Mayer, 23 F.3d 642, 648-50 (2d Cir. 1994) (district court's grant of summary judgment for plaintiffs on qualified immunity in a false arrest claim was inappropriate where facts relevant to the reasonableness of officers' actions were in dispute), cert. denied, 513 U.S. 1076, 115 S. Ct. 721 (1995); Weaver v. Brenner, 40 F.3d 527, 533, 537 (2d Cir. 1994) ("Since defendants hotly dispute plaintiff's allegations, a factual determination of their conduct is needed to resolve the issue of qualified immunity."); Warlick v. Cross, 969 F.2d 303, 305-06 (7th Cir. 1992) ("Whether Officer Cross planted the evidence was a disputed issue of fact. Obviously the question whether he was immune was very different if the evidence had been planted from the situation if the evidence had not been planted . . ."); Golino v. City of New Haven, 950 F.2d 864, 870-72 (2d Cir. 1991), cert. denied, 505 U.S. 1221, 112 S. Ct. 3032 (1992).[22/]

---

[22/] See, e.g., Lee v. McCue, 410 F. Supp. 2d 221, 225-26 (S.D.N.Y. 2006) ("This is a classic example of a case in which qualified immunity cannot be given to the officer defendants because there are too many disputes about what actually happened."); Jeanty v. County of Orange, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005) (denying summary judgment on qualified immunity because of genuine issues of material fact); Atkins v. County of Orange, 372 F. Supp. 2d 377, 402 (S.D.N.Y. 2005) (same); Mack v. Town of Wallkill, 253 F. Supp. 2d 552, 559-60 (S.D.N.Y. 2003) (same); Greenfield v. City of New York, 99 Civ. 2330, 2000 WL 124992 at *3 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); Sorensen v. City of New York, 98 Civ. 3356, 1999 WL 511923 at *3 (S.D.N.Y. July 20, 1999) ("Where, as here, there are material factual issues to be resolved, the issue of qualified immunity must await trial."); Yanez v. City of New York, 29 F. Supp. 2d 100, 109-10 (E.D.N.Y. 1998) ("pre-trial resolution of the qualified immunity defense may be defeated by a factual dispute").

The Court also believes that qualified immunity is an inappropriate defense in this case
(continued...)

**D.** **Summary Judgment On Hill's False Arrest Claim Is Granted To Correction Officers Amir and Wilson**

Hill has not presented any evidence or even alleged that defendants Correction Officers Amir and Wilson were involved directly in the alleged planting of a razor in Hill's pants. While Hill claims they conspired with C.O. Melvin (e.g., Dkt. No. 35: Hill Rule 56.1 Stmt. ¶ 2), Hill has failed to provide underline evidence that Correction Officers Amir and Wilson conspired with Correction Officer Melvin to plant the razor. "Conclusory" allegations of conspiracy are insufficient to survive summary judgment on a claim of conspiracy under § 1983.[23]/ See, e.g., Tapp v. Champagne, 164

---

[22]/ (...continued)
because the defense is unavailable where the allegedly violated right is "clearly established." See, e.g., Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002); Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000); Young v. County of Fulton, 160 F.3d 899, 903 (2d. Cir. 1998); Muhammad v. Pico, 02 Civ. 1052, 2003 WL 21792158 at *15 n.38 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.); Espinal v. Goord, 00 Civ. 2242, 2001 WL 476070 at *11 (S.D.N.Y. May 7, 2001) (Peck, M.J.); Freeman v. Strack, 99 Civ. 9878, 2000 WL 1459782 at *7 (S.D.N.Y. Sept. 29, 2000) (Peck, M.J.). The right to be free from false arrest was clearly established long before Hill's arrest, as was the right to not be falsely imprisoned based on planted evidence. See, e.g., Zabrey v. Coffey, 221 F.3d 342, 348-49, 355-57 (2d Cir. 2000) ("[The] constitutional right . . . not to be deprived of liberty on the basis of false evidence fabricated by a government officer . . . was clearly established in 1996, when [defendant's] alleged act occurred . . ."); Henry v. City of New York, 02 Civ. 4824, 2003 WL 22077469 at *4 (S.D.N.Y. Sept. 8, 2003) (following Zabrey, finds "constitutional violation if one is deprived of his liberty because of the fabrication" of evidence.).

[23]/ "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culberson, 200 F.3d 65, 72 (2d Cir. 1999); see, e.g., Robbins v. Cloutier, 121 Fed. Appx. 423, 425 (2d Cir. 2005); Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Jones v. Nat'l Commc'n & Surveillance Networks, 409 F. Supp. 2d at 471-72; Jessamy v. New Rochelle, 292 F. Supp. 2d 498, 513 (S.D.N.Y. 2003); (continued...)

Fed. Appx. 106, 108 (2d Cir. 2006); <u>Wade</u> v. <u>Pataki</u>, 75 Fed. Appx. 45, 46 (2d Cir. 2003) ("The

district court's conclusion that the defendants were entitled to summary judgment on the conspiracy

claim was also proper, as appellant presented no evidence, beyond bald assertions and conclusory

allegations, to establish a conspiracy among the defendants to deprive him of due process rights.");

<u>Silverman</u> v. <u>City of New York</u>, 64 Fed. Appx. 799, 801 (2d Cir. 2003) ("The § 1983 conspiracy

claim fails because [plaintiff]'s allegations are unspecific, conclusory and unsupported.");

<u>Ciambriello</u> v. <u>County of Nassau</u>, 292 F.3d at 325; <u>Boddie</u> v. <u>Schnieder</u>, 105 F.3d 857, 862 (2d Cir.

1997); <u>San Filippo</u> v. <u>U.S. Trust Co. of New York, Inc.</u>, 737 F.2d 246, 248, 256-57 (2d Cir. 1984)

("[P]laintiff's failure to allege any material facts to support his conclusory allegation of conspiracy

warrants summary dismissal of his complaint under either Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P.

56."), <u>cert. denied</u>, 470 U.S. 1035, 105 S. Ct. 1408 (1985); <u>Bussey</u> v. <u>Phillips</u>, 419 F. Supp. 2d 569,

586-87 (S.D.N.Y. 2006) (summary judgment); <u>Jones</u> v. <u>Nat'l Commc'n & Surveillance Networks</u>,

409 F. Supp. 2d 456, 471 (S.D.N.Y. 2006); <u>McLaurin</u> v. <u>New Rochelle Police Officers</u>, 363 F. Supp.

2d 574, 577 (S.D.N.Y. 2005) ("Complaints containing only conclusory, vague, or general allegations

of a conspiracy to deprive a person of constitutional rights will be dismissed."); <u>Lewittes</u> v. <u>Lobis</u>,

04 Civ. 0155, 2004 WL 1854082 at *12 n.13 (S.D.N.Y. Aug. 19, 2004) (Peck, M.J.) (& cases cited

---

[23/]    (...continued)
         <u>Bullard</u> v. <u>City of New York</u>, 240 F. Supp. 2d 292, 301 (S.D.N.Y. 2003). The Second
         Circuit has "recognized that such 'conspiracies are by their very nature secretive operations,'
         and may have to be proven by circumstantial, rather than direct, evidence." <u>Pangburn</u> v.
         <u>Culberson</u>, 200 F.3d at 72. Here, Hill has not provided the Court with direct or
         circumstancial evidence of conspiracy.

therein), aff'd, 164 Fed. Appx. 97 (2d Cir. 2006). Thus, summary judgment is granted to Correction Officers Amir and Wilson on Hill's false arrest claim.

## IV. ALL DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON HILL'S § 1983 MALICIOUS PROSECUTION CLAIM

### A. Legal Standard Governing Malicious Prosecution Claims[24]

"The Second Circuit has held that '[f]reedom from malicious prosecution is a constitutional right that has long been clearly established.'" Winn v. McQuillan, 390 F. Supp. 2d 385, 389-90 (S.D.N.Y. 2005) (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)). "Claims for . . . malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for . . . malicious prosecution under [New York] state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); see also, e.g., Winn v. McQuillan, 390 F. Supp. 2d at 390; Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) "the defendant initiated a criminal proceeding"; (2) the proceeding terminated in plaintiff's favor; (3) "there was no probable cause for the criminal charge"; and (4) the defendant acted maliciously. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004). For a malicious prosecution claim to rise to a constitutional level under § 1983, there must also be a post-arraignment seizure. Jocks v. Tavernier, 316 F.3d at 136; see also, e.g., Singer v. Fulton County

---

[24] For additional decisions by this Judge discussing the summary judgment standards in Section 1983 cases, in language substantially similar to that in this entire section of this Opinion, see, Ramashwar v. Espinoza, 05 Civ. 2021, 2006 WL 23481 at *7 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.).

<u>Sheriff</u>, 63 F.3d 110, 116-17 (2d Cir. 1995), <u>cert. denied</u>, 517 U.S. 1189, 116 S. Ct. 1676 (1996).

New York law "'places a heavy burden on malicious prosecution plaintiffs. . . .'" <u>Rothstein</u> v.

<u>Carriere</u>, 373 F.3d at 282.

      **B.**     **Hill's Malicious Prosecution Claim Fails Because Of The Grand Jury**
               **Determination Of Probable Cause**

        Here, element two is satisfied because Hill prevailed at his criminal trial. (<u>See</u> page

7 above.) Defendants argue that no issue of material fact exists as to elements one, three and four

of Hill's malicious prosecution claim: whether defendants initiated Hill's prosecution, whether there

was probable cause to prosecute Hill, and whether defendants acted with malice. (<u>See</u> Dkt. No. 28:

Defs. Br. at 2, 9-14; Dkt. No. 36: Defs. Reply Br. at 1-2, 6-8.) Because the Court agrees that

defendants are entitled to summary judgment on the basis of the third prong, existence of probable

cause, the Court need not examine the other elements of a malicious prosecution claim.

        An indictment by a grand jury "'creates a presumption of probable cause'" to prosecute

that defendant.[25/] <u>Rothstein</u> v. <u>Carriere</u>, 373 F.3d 275, 282-83 (2d Cir. 2004).[26/] "'The presumption

---

[25/]    This presumption of probable cause from the grand jury's indictment applies to malicious
    prosecution claims but not to false arrest claims. <u>McClellan</u> v. <u>Smith</u>, 439 F.3d 137, 145 (2d
    Cir. 2006) ("[W]e look to New York law to determine whether a presumption of probable
    cause arising from a grand jury indictment can be a defense to these claims . . . '[T]he New
    York Court of Appeals has expressly held that the presumption of probable cause arising
    from an indictment "applies only in causes of action for malicious prosecution and is totally
    misplaced when applied in false [arrest] actions."'") (internal citation omitted; quoting <u>Savino</u>
    v. <u>City of New York</u>, 331 F.3d 63, 75 (2d Cir. 2003)) (quoting <u>Broughton</u> v. <u>State</u>, 37 N.Y.2d
    451, 456, 373 N.Y.S.2d 87, 92-93, <u>cert. denied</u>, 423 U.S. 929, 96 S. Ct. 277 (1975)); <u>accord</u>,
    <u>e.g.</u>, <u>Reid</u> v. <u>City of New York</u>, 00 Civ. 5164, 2004 WL 626228 at *7 n.4 (S.D.N.Y. Mar. 29,
    2004), <u>report & rec. adopted</u>, 2004 WL 1488194 (S.D.N.Y. July 1, 2004).

[26/]    <u>Accord</u>, <u>e.g.</u>, <u>Boyd</u> v. <u>City of New York</u>, 336 F.3d 72, 77 (2d Cir. 2003); <u>Savino</u> v. <u>City of</u>
                    (continued...)

may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith.'" <u>Rothstein</u> v. <u>Carriere</u>, 373 F.3d at 283 (quoting <u>Colon</u> v. <u>City of New York</u>, 60 N.Y.2d at 82-83, 468 N.Y.S.2d at 455-56).[27/]

        Thus, in order for a plaintiff to prove a malicious prosecution claim after having been indicted, "'he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" <u>Rothstein</u> v. <u>Carriere</u>, 373 F.3d at 283 (quoting <u>Colon</u> v. <u>City of New York</u>, 60 N.Y.2d at 83, 468 N.Y.S.2d at 456); <u>accord</u>, <u>e.g.</u>, <u>Savino</u> v. <u>City of New York</u>, 331 F.3d at 72; <u>Ramashwar</u> v. <u>Espinoza</u>, 2006 WL 23481 at *7. Alternatively, the presumption "'can be overcome by a showing by claimant that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.'" <u>Williams</u> v. <u>City of New York</u>, 02 Civ. 3693, 2003 WL 22434151 at *6 (S.D.N.Y. Oct. 23, 2003) (Motley, D.J.), <u>aff'd</u>, 120 Fed. Appx. 388 (2d Cir. 2005); <u>accord</u>, <u>e.g.</u>, <u>Ramashwar</u> v. <u>Espinoza</u>, 2006 WL 23481 at *7.

        Here, Hill was indicted by a grand jury (<u>see</u> page 5 above), and thus must rebut the presumption that there was probable cause to prosecute him. Hill seems to contend that his

---

[26/]      (...continued)
<u>New York</u>, 331 F.3d 63, 72 (2d Cir. 2003); <u>Colon</u> v. <u>City of New York</u>, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983); <u>Ramashwar</u> v. <u>Espinoza</u>, 05 Civ. 2021, 2006 WL 23481 at *7 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.).

[27/]      <u>See also</u>, <u>e.g.</u>, <u>Boyd</u> v. <u>City of New York</u>, 336 F.3d at 77; <u>Savino</u> v. <u>City of New York</u>, 331 F.3d at 72; <u>Ramashwar</u> v. <u>Espinoza</u>, 2006 WL 23481 at *7.

possession of contraband infraction did not provide probable cause for his arrest because Correction Officer Melvin planted the razor in Hill's pants pocket.[28/]   Additionally, Hill argues that defendants perjured themselves before the grand jury.   (Hill Rule 56.1 Stmt. ¶ 8.)   However, Hill does not present the Court with the defendants' grand jury testimony, so for all this Court knows, some of the defendants may not have testified before the grand jury and others may have testified before the grand jury, as at trial, that they did not recall the incident.   (See pages 6-7 above.)   Furthermore, Hill has not presented any admissible evidence beyond his own testimony that Correction Officer Melvin planted the razor.   (See page 4 & n.6 above.)   Hill must present more than "'mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith'" to rebut the presumption of probable cause.   Reid v. City of New York, 2004 WL 626228 at *7 (quoting Savino v. City of New York, 331 F.3d at 72); see also, e.g., Simmons v. New York City Police Dep't, 97 Fed. Appx. 341, 343 (2d Cir. 2004) ("Although [plaintiff] testified that the arresting officer . . . told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct."); Ramashwar v. Espinoza, 2006 WL 23481 at *8; Scully v. City of Watertown, No. 7:03 CV 846, 2005 WL 1244838 at *11 (N.D.N.Y. May 25, 2005) ("The simple assertion that [plaintiff] was acquitted and therefore the officers must have lied is

---

[28/]   Hill asserts that the probable cause for his arrest on the possession of contraband charge was based on lies defendants made to the arresting officers.   (Dkt. No. 35: Hill Rule 56.1 Stmt. ¶ 8.)   The Court presumes that Hill is alleging that there was no probable cause to arrest him because the arrest was based on fraudulent evidence.   (See Compl. ¶ "Claim Five": "Plaintiff on July 29, 2001 was charged criminally with a D. Felony of promoting prison contraband, as a result of being framed by the defendants.")

insufficient to overcome the presumption created by the grand jury's indictment . . ."); <u>Montes</u> v. <u>King</u>, 00 Civ. 4707, 2002 WL 1808209 at *3 n.5 (S.D.N.Y. Aug. 6, 2002) ("[U]nsubstantiated speculation" that officer acted in bad faith is not enough to survive summary judgment.); <u>Jenkins</u> v. <u>City of New York</u>, 98 Civ. 7170, 98 Civ. 7338, 1999 WL 782509 at *9, 11 (S.D.N.Y. Sept. 30, 1999) (despite later-discovered perjury by a civilian witness at the grand jury, plaintiff "failed to produce any evidence of intentional police misconduct and his allegations are contradicted by the affidavits and contemporaneous documentary record in support of the motion. [Plaintiff] has thus failed to rebut the presumption that probable cause to commence the proceeding existed."), <u>aff'd</u>, 216 F.3d 1072 (2d Cir. 2000).

Hill's argument proves merely that there were two versions of the strip search incident – (1) Hill's and (2) the prosecution's witnesses' including the correction officers'. Conflicting testimony between the (civil) plaintiff and defendants is not sufficient to rebut the presumption of probable cause. <u>See</u>, <u>e.g.</u>, <u>Brogdon</u> v. <u>City of New Rochelle</u>, 200 F. Supp. 2d 411, 422 (S.D.N.Y. 2002) ("The record is barren of evidence (as opposed to conclusory allegations) to overcome the presumption created by the indictment. [Plaintiff] asserts that [the defendant officer] perjured himself, but that conclusory allegation is insufficient to overcome this strong presumption. . . . [Moreover,] '[t]he existence of a "swearing contest" between plaintiff as to his innocence and an eye-witness as to the events "cannot of itself render the issue of probable cause a jury question."'"); <u>DiMascio</u> v. <u>City of Albany</u>, No. 93-CV-0452, 1999 WL 244648 at *3 (N.D.N.Y. Apr. 21, 1999) (contradictions between plaintiff's and defendant's trial testimony "is insufficient to give rise to an inference of fraud, perjury or the withholding of evidence and is probative of little more than a

disagreement over the turn of events" on the date of plaintiff's arrest.), aff'd, 205 F.3d 1322 (2d Cir. 2000).

Even if Hill provided the Court with the criminal trial testimony of inmate witness Gillard, and even if Gillard's testimony substantiated Hill's allegation, such testimony would not rebut the presumption of probable cause.[29/] "Conflicting testimony between witnesses at the criminal trial is not enough to rebut the presumption of probable cause." Ramashwar v. Espinoza, 2006 WL 23481 at *8; see, e.g., DiMascio v. City of Albany, 1999 WL 244648 at *3 ("A mere conflict between witness' trial testimony alone is insufficient to suggest fraud, perjury or the withholding of evidence."); Hathaway v. County of Essex, 995 F. Supp. 62, 69 (N.D.N.Y. 1998) ("Reliance on variations in testimony . . . as evidence of fraud, suppression of evidence, or perjury [is] insufficient to overcome the presumption of probable cause."), aff'd, 172 F.3d 37 (2d Cir.), cert. denied, 528 U.S. 894, 120 S. Ct. 222 (1999); see also, e.g., Colon v. City of New York, 60 N.Y.2d at 83, 468 N.Y.S.2d at 456 (Police's "failure to pursue the investigation is not the equivalent of fraud or the suppression of evidence. Nor do variations in the witnesses' testimony prove perjury. Rather, they appear to indicate only the witnesses' differing perceptions of the incidents they observed.").

---

[29/]    Gillard testified at Hill's infraction hearing that the razor did not appear on the x-ray machine monitor as Hill's pants passed through the machine. (See page 4 n.6 above.) Conversely, C.O. Melvin reported that he initially saw the razor blade on the x-ray machine as Hill's pants passed through. (See pages 4-5 above.) That Gillard did not see the razor on the x-ray monitor is not necessarily inconsistent with C.O. Melvin, who is trained in using the equipment, seeing the razor. (See Ex. N: Hearing Disposition Notice, where hearing officer credited Gillard's testimony as consistent with the "staff" testimony that Hill possessed a weapon.)

The fact that Hill's version of the incident contradicts that of the officers is not enough to present an issue of fact as to the probable cause element of Hill's malicious prosecution claim.[30/] (See cases cited above.)  If it were, any time there were conflicting versions of an incident and the criminal trial resulted in a not guilty verdict, the arresting officers could be sued for  malicious prosecution, despite a grand jury finding of probable cause.  That is not the state of the law, nor should it be.  See Ramashwar v. Espinoza, 2006 WL 23481 at *9.  Similarly, if probable cause could be met by an unsupported allegation that an arrest was based on planted evidence, then any person found in possession of contraband could sue the searching officers for malicious prosecution merely by claiming the officers planted the contraband.  After a grand jury indictment, the case law for malicious prosecution sets a higher standard, which cannot be met by speculation or self-serving statements.

Moreover, even if the allegation that an officer planted evidence and then lied about it to the grand jury could in some cases rebut the presumption of probable cause, in this case Hill's malicious prosecution claim fails because he has not supplied the Court with any grand jury testimony.  The Court thus has no idea which defendants, if any, testified, nor what their grand jury

---

[30/]     This finding is not inconsistent with the Court's finding that there is a factual dispute as to Hill's false arrest claim.  Although the existence of probable cause for Hill's arrest is disputed in both the malicious prosecution and false arrest claims, Hill's affidavit is not sufficient to rebut the presumption in a malicious prosecution claim.  (See cases cited above.)  Although the court in Chimurenga v. City of New York, 45 F. Supp. 2d 337, 343 (S.D.N.Y. 1999), denied summary judgment on both the false arrest and malicious prosecution claims, the criminal prosecution was dismissed by the district attorney, apparently before grand jury indictment.  Thus the plaintiff in Chimurenga, unlike Hill, did not have to rebut a presumption of probable cause in order to survive summary judgment on a malicious prosecution claim.

testimony was.  See e.g., Rothstein v. Carriere, 373 F.3d at 284 ("The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially[.]'  Here, the content of [defendant's] grand jury testimony is unknown, as is the content of the rest of the government's presentation."); Scully v. City of Watertown, 2005 WL 1244838 at *11 (Plaintiff failed to overcome presumption of probable cause because "[p]laintiff merely assert[ed], in wholly conclusory fashion, that [defendants] must have lied before the grand jury because he was eventually acquitted.  However, Plaintiff neither provides defendants' grand jury testimony, nor points to any specific trial testimony that is purportedly false.") (citation omitted).  That certain of the defendants could not recall the incident at trial two years later is not, as Hill asserts, evidence of malicious prosecution.  It is not surprising that correction officers might not recall a minor incident like this two years later.  Indeed, if as Hill asserts the correction officers were out to get him, one would expect them to have testified against Hill at his criminal trial rather than testifying to a lack of recollection.

## CONCLUSION

For the reasons discussed above, defendants' summary judgment motion is granted in part and denied in part.  Specifically:

1.    All defendants are entitled to summary judgment dismissing Hill's denial of religious freedom claim as time barred.

2.      All defendants are entitled to summary judgment dismissing Hill's malicious prosecution claim because Hill has failed to allege facts to rebut the presumption of probable cause.

3.      Defendants C.O. Amir and C.O. Wilson are entitled to summary judgment dismissing Hill's false arrest claim against them because there is no evidence that they were involved in C.O. Melvin's alleged planting of the razor blade that led to Hill's arrest.

4.      Defendants C.O. Melvin and Captain Eck are denied summary judgment on Hill's false arrest claim against them because the claim is not time barred, there are material issues of disputed fact as to whether C.O. Melvin planted the razor blade (and whether Captain Eck knew that), and they are not entitled to qualified immunity because of the same disputed facts.

## SCHEDULING ORDER

The parties are to file the Proposed Joint Pretrial Order by August 11, 2006.  Defense counsel is to put the Proposed Joint Pretrial Order together; plaintiff Hill is to provide his material for the Pretrial Order to defense counsel by July 28, 2006.  If plaintiff does not do so, defendants are to separately file their portions of the Pretrial Order.

SO ORDERED.

Dated:      New York, New York
            June 27, 2006

Respectfully submitted,

Andrew J. Peck
United States Magistrate Judge

Copies to:    Demetrius Hill
            Basil C. Sitaras, Esq.